IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

TYC DEVELOPMENT COMPANY, LLC,  )
                               )
                               )
     Plaintiff,                )
                               )
        v.                     )
                               )      1:09cv534 (JCC)
BIRACH BROADCASTING CORP.,     )
                               )
                               )
     Defendant.                )

**M E M O R A N D U M   O P I N I O N**

      The Court heard the evidence on this non-jury case on January 12, 2010.  At issue is the Guaranty of the February 6, 2008 Lease between TYC Development Company, L.L.C., ("TYC" or "Plaintiff") as landlord and the Twin Star Group, Inc. ("Twin Star") as tenant for lease of commercial property at 1600 Tysons Boulevard, Suite 600, McLean, Virginia, 22102 (the "Lease").  For the reasons set forth below, the Court finds in favor of the Defendant, Birach Broadcasting Corporation ("BBC" or "Defendant").

### I.  Findings of Facts

      1.  Plaintiff TYC is a Virginia Limited Liability Company with its principal place of business at 2000 Tower Oaks

Boulevard, Rockville, Maryland. (Pl.'s Tr. Ex. ("PTE") 2 (Lease).)

2. Lerner Corporation ("Lerner") is the managing and leasing agent for TYC and is responsible for managing, operating, and leasing the Property for TYC. (Guelcher at 43:8-10.) [1]

3. Twin Star Group, Inc. ("Twin Star") is now a defunct corporation once organized under the laws of the Commonwealth of Virginia, and was owned by Sima Birach, Jr. ("Junior"). (PTE 2; Birach Sr. at 143:22-24.)

4. Defendant BBC is a Michigan Corporation with its principal place of business in Southfield, Michigan. (Birach Sr. at 109:22-110:1)

5. The parties agree that jurisdiction and venue are proper before this Court. (Tr. at 4:5-9.)

## The Parties

6. BBC was founded by Sima Birach, Sr. ("Senior") who is the Chairman, President and sole owner of the company. BBC owns one television and 25 AM radio licenses, which are regulated by the Federal Communications Commission ("FCC"). (Birach Sr. at 113:9; 155:9-14.)

---

[1] All references to the Trial Transcript will be cited by the name of the speaker followed by the page and line of the trial transcript (i.e. NAME at PAGE No.:LINE No.). As the trial lasted one day, all citations occurred on January 12, 2010.

7. Junior was involved in his father's business from an early age. Senior always hoped that Junior would follow him in the family business and eventually succeed Senior when he retired. (Birach Sr. at 131:22-132:5.)

8. Junior is not, nor has he ever been, an officer, director, or chairman of BBC. (Birach Sr. at. 128:24-129:4)

9. Junior was the founder and Chairman of Twin Star. (PTE 2; Birach Sr. at 143:22-24; 145:2-4.)

10. Senior was aware that Junior had started the Twin Star venture but Senior had no involvement in its operation. (Birach Sr. at 143:22-24.)

11. Plaintiff TYC owns an office building located at 1600 Tysons Boulevard, McLean, Virginia (the "Property"). (Guelcher at 43:11-12.)

## Formation of the Lease

12. On February 6, 2008, TYC entered into a lease agreement with Twin Star for lease of the Property for a term of 183 months (the "Lease"). (PTE 2; Guelcher at 47:4-7.)

13. The Lease requires the payment of rents based on the schedules contained therein pursuant to § 1(a)(2), requires the payment of interest and additional charges for late rent payments pursuant to § 3, and includes specific provisions governing the parties' rights in the event of Tenant's default

on rent payments pursuant to § 11.  (PTE 2 at §§ 1(a)(2), 3, 11.)

15. The Lease requires Twin Star to promptly discharge any mechanic's liens placed upon the Property. (PTE 2 § 22(c).)

15. Prior to entering into the Lease, Lerner was aware that the potential tenant, Twin Star, was a "start-up" company and that the Lease was to be guaranteed by BBC.  (PTE 17 ¶ 21; Guelcher at 46:13-25.)

16. On October 24, 2007, Junior signed a Guaranty of Lease, purportedly on behalf of BBC, and executed for the benefit of TYC in the event Twin Star were to breach the terms of the Lease.  The Guaranty was entered into on February 6, 2008.  (PTE 1.)

17. The Guaranty states that it is "entered into" by "BBC" and is signed by Sima Birach Jr.  Junior's title is listed on the Guaranty as "Chairman" of BBC.  (PTE 1.)

18. The terms of the Guaranty provide that BBC "irrevocably, absolutely and unconditionally" guarantees the payment of rent due to TYC, as well as the "prompt and complete performance and observance by Tenant [Twin Star] of all other covenants, terms, conditions and obligations under the Lease." (PTE 1 at § 2.)

19. Junior has testified that at the time he signed the Guaranty he was the Chairman of BBC. (Birach Jr. Dep. Tr. at 9, Nov. 11, 2009.[2]) Senior has testified that at no time was Junior ever the Chairman, board member or Officer of BBC. (Birach Sr. at 128:24-129:4.)

20. Junior was not, nor has he ever been, an Officer, Director, Shareholder or Chairman of Defendant BBC. (Birach Sr. at 128:24-129:4.)

21. Lerner accepted Junior's statement that he was Chairman of BBC and therefore was authorized to enter into the Guaranty. (Guelcher at 62:6-10.)

22. Prior to entering into the Lease, Plaintiff did not speak with Senior to ascertain whether Junior was in fact the "Chairman" of BBC. (Guelcher at 46:12-15; 61:8-11; Birach Sr. at 120:7-11.)

23. Plaintiff did not attempt to obtain a corporate resolution from BBC that would identify the Chairman, Directors and Officers of BBC. Guelcher, at 58:3-10; 60:19-22.)

24. Prior to the signing of the Guaranty Plaintiff did not request or receive any written or oral representations from Senior that Junior had authority to sign the Guaranty on

---

[2] Sima Birach Jr. was unable to testify at trial for medical reasons. The parties agreed to submit his deposition testimony in lieu of live testimony through designations and counter-designations of his Deposition transcript.

behalf of BBC. (Guelcher at 46:12-15; 61:8-11; Birach Sr. at 120:7-11.)

25. Plaintiff did not attempt to review Defendant's website to ascertain whether Junior was a board member or corporate officer. (Guelcher at 65:8-19; Birach Sr. at 148:1-8.)

26. Plaintiff made no other attempt, other than speaking with Junior, to ascertain if Junior had authority to sign the Guaranty on behalf of BBC prior to its decision to enter into the Lease with Twin Star. (Guelcher at 62:6-10.)

27. Junior never contacted Senior to request that Senior, on behalf of BBC, guarantee the Twin Star's Lease with TYC. (Birach Sr. at 120:12-15.)

28. Senior never authorized Junior to enter into any lease guaranties on behalf of BBC. (Birach Sr. at 125:23-126:1.)

29. Junior was not authorized to sign the Guaranty on behalf of BBC. (Birach Sr. at 125:23-126:1.)

### Breach of Lease

30. The first two deposit checks delivered by Twin Star to TYC to secure the Property could not be cashed. (Guelcher at 70:16-21.)

31. Following a prolonged build-out of the Property by Twin Star, numerous mechanic's liens were placed on the

Property by various entities that had not been paid by Twin Star. (PTEs 4-10.) Twin Star received notice of these liens through TYC's counsel, J. Patrick May, between October 8, 2008 and January 15, 2009. (PTE 3.) A total of six lawsuits were brought by third parties attempting to enforce these liens. (PTEs 67-71.)

32. On November 20, 2008, TYC sent a demand letter to BBC addressed to the Property, demanding that BBC cure Twin Star's default of the Lease. (PTE 11.) Senior was unaware of the existence and contents of the demand letter. (Birach Sr. at 120:7-11.)

33. On February 6, 2009, TYC secured a judgment for possession of the Property and a monetary judgment against Twin Star for accrued and unpaid rent through the Tenant's eviction, in the amount of $439,870.94, plus pre-judgment interest in the amount of $2,885.63, and attorney's fees of $12,715.00. (PTE 18.)

34. On March 27, 2009, TYC terminated the Lease and regained possession of the Property. (PTE 3; PTE 18.)

35. TYC has been unable to re-lease the Property formerly leased by Twin Star. (Guechler at 56:19-21.)

36. On January 9, 2001, BBC entered into a Time Brokerage Agreement ("TBA") with ABC Radio/Disney in which

7

Junior signed the TBA representing himself as the Vice President of BBC. (PTE 63; Birach Sr. at 135:9-136:19.)

37. Junior entered into the TBA without the knowledge of Senior. (Birach Sr. 136:1-19.) Junior was not authorized to enter into the TBA, (Birach Sr. at 152:8-12), and was never a Vice President of BBC. (Birach Sr. at 128:24-129:4.)

38. Senior later approved the ABC Radio/Disney TBA by initialing the TBA and filing it with the FCC. (Birach Sr. 136:1-19; 151:23-152:12.)

39. The TBA is still in force today. (Birach Sr. at 136:18-19.)

40. There is not sufficient evidence to show that Plaintiff, prior to entering into the Lease and accepting the Guaranty, had any knowledge of the ABC Radio TBA, Junior's actions on behalf of BBC, or Senior's subsequent ratification of Junior's actions.

41. In 2005, Senior authorized Junior to act on behalf of BBC in appearing before the Montgomery County, Maryland Zoning Board. (Birach Sr. at 15:11-12;134:1-12.)

42. There is not sufficient evidence to show that Plaintiff, prior to entering into the Lease and accepting the Guaranty, had knowledge of Senior's authorization of Junior's appearance before the Montgomery County, Maryland Zoning Board.

43. In order to secure financing from ASB Capital, Junior entered into a borrowing agreement with ASB Capital in which he signed the agreement as "Chairman" of BBC, and forged his father Senior's signature as "Director." (PTE 45; Senior at 127:11-128:12.)

44. On June 11, 2008, after Plaintiff had entered into the Lease with Twin Star and accepted the Guaranty, Senior and Junior signed a separate guaranty on behalf of BBC for the benefit of WP Media Lending, LCC, securing a loan made to Twin Star. (PTE 37-D; Birach Sr. at 144:2-147:1.[3])

45. On August 19, 2009, a Consent Order was issued in the case of *Sima Birach Sr. v. Sima Birach Jr.* (1:09cv411, (E.D. Va. 2009)), permanently enjoining Junior from using the name "Birach Broadcasting Corporation," from doing any business under the trade name Birach Broadcasting Corporation and from representing himself as being associated with Birach Broadcasting Corporation. (Def. Trial Ex. ("DTE") 52.)

46. After consenting to that Permanent Injunction Order, Junior signed a number of lease applications, credit applications, and Virginia DMV filings, falsely representing

---

[3] While not listed in the Trial Transcript Index, Plaintiff's Exhibit 37-D was admitted without objection. (Tr. at 76-77.)

9

himself as an Officer of BBC in contravention of the Order.[4]
(Def. Trial Ex. 53.)

## II. Analysis

Plaintiff brings an action for Breach of Guaranty against Defendant. (Compl. ¶¶ 15-17.) Defendant asserts that the February 6, 2008 Guaranty at issue was fraudulently signed by Junior and thus void. (Ans. at 4-5.) For the Guaranty to be valid, Junior must have had the authority to bind BBC to the terms of the Guaranty. To have such authority, Junior must have had, as he asserted, actual authority as a corporate representative of BBC (such as an officer, director or chairman of the company), agency authority as an authorized agent of BBC, or apparent authority or agency by estoppel through the reasonable belief of TYC that Junior was an authorized agent of BBC. Based on the evidence before the Court, it appears that Junior did not have the actual or apparent authority to act on behalf of BBC, and the Guaranty is therefore fraudulent, invalid, and cannot legally bind BBC. Judgment is thus entered in favor of Defendant.

---

[4] DTE 53 is admitted under Federal Rule of Evidence 404(b) which provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" but may be admissible for "other purposes, such as proof of . . . intent." Fed. R. Evid. 404(b). In *United States v. Mohr*, the Fourth Circuit held that the rule "is understood as a rule of inclusion," 318 F.3d 613 (citing *US v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997.)), and covers evidence of both prior and subsequent acts. See, *United States v. Hadaway,* 681 F.2d 214, 217 (4th Cir. 1982)("subsequent conduct may be highly probative of prior intent.") The Court admits it for this limited purpose.

A.  Actual Authority

Plaintiff offers the testimony of Junior in support of its contention that Junior was authorized to enter Guaranty as the Chairman of BBC.  At his deposition, Junior testified that, at the time he signed the Guaranty, he was the Chairman of BBC. (Birach Jr. Dep. Tr. at 9:18-20, Nov. 11, 2009.)  Lerner accepted Junior's statement that he was the Chairman of BBC and authorized to enter into the Guaranty.  (Guelcher at 62:6-10.) Plaintiff offered no other evidence that Junior was ever the Chairman, Director or corporate officer of BBC.  Plaintiff did not attempt to obtain a corporate resolution from BBC that would identify the actual Chairman, Directors and Officers of BBC. (Guelcher, at 58:3-10; 60:19-22.)  Plaintiff did not attempt to review Defendant's website to ascertain whether Junior was a board member or corporate officer.  (Guelcher at 65:8-19; Senior at 148:1-8.)  Plaintiff offered no evidence that it made any attempt, other than speaking with Junior, to ascertain if Junior had authority to sign the Guaranty on behalf of BBC prior to its decision to enter into the Lease with Twin Star.  (Guelcher at 62:6-10.)  Further, Plaintiff did not review public FCC filings that would have shown Senior to be the actual Chairman of BBC. (Guelcher 64:22-25.)

Senior disputes Junior's account and testified that at no time was Junior ever the Chairman, a board member or an

officer of BBC. (Birach Sr. at 128:24-129:4.) On this critical question of authority the Court finds that Senior is a more credible witness than Junior. While Senior was both crusty and cantankerous during his testimony, he was credible. After observing his testimony and considering the inflection of Senior's voice, as well as his demeanor and manner on the stand, this Court finds that Senior was truthful.

By comparison, after observing the designated portions of Junior's videotaped deposition testimony, considering the inflection of his voice, demeanor, and manner of testifying, the Court finds that Junior was not credible. In addition to his testimony, Junior's credibility is impeached for the following reasons. First, in the case of *Elizabeth Wynne v. Sima Birach Jr.*, 1:09cv15 (E.D. Va. 2009), Judge Buchanan found Junior had instructed one of his employees to commit fraud on behalf of Twin Star relating to the construction of Twin Star's office space. (DTE 51 ("Report and Recommendation, in 1:09cv15") at 8, 13). Second, Junior's deposition testimony in *W.P. Media Lending, LLC et al. v. Twin Star Holdings, Inc. et al.*, 1:09cv152, E.D. Va. 2009, conflicts, at least in part, with his deposition testimony in this case. (PTE 48.) Third, Junior had fraudulently entered into a separate lending agreement with ASB Capital which he also falsely signed as BBC's "Chairman" and on which he forged Senior's signature, signing Senior's name as

BBC's "Director."  (PTE 45; Senior at 127:11-128:12.)  Finally, the Court considers Defense Exhibits 52 and 53.  Defense Exhibit 52 is an August 19, 2009 Consent Order in the case of *Sima Birach Sr. v. Sima Birach Jr.*, 1:09cv411, (E.D. Va. 2009), enjoining Junior from using the name "Birach Broadcasting Corporation."  (Def. Trial Ex. 52.)  Exhibit 53 is a series of lease applications, credit applications, and Virginia DMV filings, where Junior signs his name, in contravention of the Order, on behalf of BBC.  (DTE 53.)  Junior's willingness to falsely represent himself and his authority in the face of a permanent injunction to which he consented is relevant to his intent to fraudulently represent himself as the "Chairman" of BBC in signing the Guaranty.  In short, the Court does not find Junior to be a truthful witness.

Based on the testimony of both Junior and Senior and the admitted exhibits, the Court finds that Junior was not an Officer of BBC, much less the Chairman of BBC, and thus did not have the actual authority to enter into the Guaranty on behalf of BBC.

    B.    <u>Agency</u>

In the alternative the Court finds that, the Guaranty would be enforceable if Junior was an authorized agent of BBC. Agency is a "fiduciary relationship resulting from one person's *manifestation of consent* to another person that the other shall

13

act on his behalf and subject to his control, and the other person's manifestation of consent so to act." *Reistroffer v. Person*, 247 Va. 45 (Va. 1994) (emphasis supplied); *Giordano v. Atria Assisted Living, Virginia Beach*, 429 F.Supp.2d 732, 737 (E.D. Va. 2006). "Consent is defined as the manifestation of intent by the principal to the agent: Authority [or consent] to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Giordano*, 429 F.Supp.2d at 737 (*citing* Restatement (Second) of Agency § 26 (1958)). In Virginia, "one who deals with an agent does so at his own peril and has the duty of ascertaining the agent's authority. If the agent exceeds his authority, the principal is not bound by the agent's act." *Kern v. J.L. Barksdale Furniture Corporation*, 224 Va. 682, 685 (Va. 1983).

Junior never contacted Senior to request that Senior, on behalf of BBC, guarantee Twin Star's Lease with TYC or that Senior authorize Junior to enter into the Guaranty. (Birach Sr. at 120:12-15.) Senior neither consented to nor authorized Junior to enter into any lease guaranties on behalf of BBC including the Lease Guaranty at issue here. (Birach Sr. at 125:23-126:1.) As stated above, Plaintiff made no attempt, other than speaking with Junior, to ascertain whether Junior had

authority to sign the Guaranty on behalf of BBC prior to its decision to enter into the Lease with Twin Star. (Guelcher at 62:6-10.) Plaintiff did not offer evidence sufficient to show that Junior was acting as an agent of BBC and there is no evidence before the Court that Plaintiff made a sufficient attempt to ascertain whether Junior had the requisite authority to enter into the Guaranty.

        C.    <u>Apparent Authority and Apparent Agency</u>

The final way the Guaranty might be enforceable against BBC is if Junior was acting with apparent authority or with apparent agency. The doctrines of apparent authority and apparent agency are closely related yet distinct under Virginia law. *See Sanchez v. Medicorp Health System,* 270 Va. 299, 304 (Va. 2005). Apparent agency is also known as agency by estoppel: "an agency created by operation of law and established by a *principal's* actions that would reasonably lead a third person to conclude that an agency exists." *Sanchez*, 270 Va. at 304 (citations omitted) (emphasis added). Apparent authority, by comparison, "presupposes the existence of an agency relationship and concerns merely the [scope of] authority of the agent." *Id.* It is the authority that "*a third party* reasonably believes an agent has, *based on the third party's dealings with the principal* even though the principal did not confer or intend

to confer the authority."[5] *Sanchez*, 270 Va. at 303 (emphasis added) (*citing* Black's Law Dictionary 142 (8th ed. 2004)).

For purposes of this case, this is a distinction without a difference. Under both doctrines, Plaintiff must demonstrate that it had a reasonable belief that Junior had the authority to act on behalf of Senior and BBC when signing the Guaranty, and that Plaintiff's belief was based on its dealings with Senior. *See Sanchez,* 270 Va. at 303 (finding that apparent authority must be "based on the third party's dealings with the principal"); *Id.* at 304 (finding that apparent agency must be "established by a principal's actions.") Indeed, the principal (Senior) may be bound only "to the extent he holds out another [Junior] as having authority to act for him." *Kern*, 224 Va. at 685.

Here, Plaintiff has failed to demonstrate that it had any "dealings with", or knowledge of any "actions of" Senior that would have led to a reasonable belief that Junior was acting with the apparent authority or apparent agency necessary to bind BBC to the terms of the Guaranty. While TYC offers evidence of other transactions where Senior acquiesced to or ratified Junior's actions on behalf of BBC (See PTEs 37-D, 63;

---

[5] The Virginia Supreme Court continued that "apparent authority" is "that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possess, in which event the principal is stopped to deny that the agent possessed the authority which he exercised." *Id.*

16

Birach Sr. at 135:9-136:19; 144:2-147:1; 151:23-152:12), they have not established that TYC had any knowledge of these transactions prior to entering into the Lease. Thus, TYC's belief in Junior's authority could not be based on its "dealings" with Senior or based upon the "actions" of Senior, as is required under Virginia law. *See Sanchez*, 270 Va. at 304. TYC and its representative Lerner did not perform sufficient due diligence in order to verify the authority of Junior to enter into the Guaranty. Based on the evidence before this Court, Plaintiff made no attempt, other than speaking with Junior, to ascertain if Junior had authority to sign the Guaranty on behalf of BBC prior to its decision to approve Twin Star's Lease. (Guelcher at 62:6-10.)

Prior to the signing of the Guaranty, Plaintiff did not request or receive any written or oral representations from Senior that Junior had authority to sign a guaranty on behalf of BBC. (Guelcher at 46:12-15; 61:8-11; Birach Sr. at 120:7-11.) Plaintiff did not attempt to obtain a corporate resolution from BBC that would identify the Chairman, Directors and Officers of BBC. (Guelcher, at 58:3-10; 60:19-22.) Plaintiff did not attempt to review Defendant's website to ascertain whether or not Junior was a board member or corporate officer. (Guelcher at 65:8-19.) Senior did not hold out Junior as an agent of BBC, nor did Plaintiff offer evidence of any actions or

17

manifestations by Senior that would establish apparent agency or authority. Plaintiff's belief in Junior's authority was not reasonable.

    D.    <u>Conclusion</u>

The evidence shows that Junior was not an officer, director or shareholder of BBC, was not an agent in fact authorized by Senior to enter into the Guaranty, nor was Junior acting under any apparent authority or as an agent by estoppel at the time he signed the Guaranty. The Guaranty is therefore fraudulent, invalid, and void.

### III. Conclusions of Law

1. Plaintiff TYC is a Virginia Limited Liability Company with its principal place of business at 2000 Tower Oaks Boulevard, Eighth Floor, Rockville, Maryland.

2. Lerner is the managing and leasing agent for TYC and is responsible for managing, operating, and leasing the Property for TYC.

3. Twin Star is a now defunct corporation organized under the laws of Virginia.

4. BBC is a Michigan Corporation, with its place of business in Southfield, Michigan.

5. The amount of the controversy exceeds $75,000, and accordingly the Court has jurisdiction under 28 U.S.C. § 1332.

6. Junior was not authorized to sign the Guaranty as Chairman of BBC or in any other capacity.

7. Junior was not an agent-in-fact of BBC at the time he signed the Guaranty.

8. Junior was not acting under any apparent authority or as an agent by estoppel at the time he signed the Guaranty.

9. The Guaranty is not a valid agreement and is not enforceable against Sima Birach Sr. or BBC.

10. Accordingly, the Court enters judgment in favor of the Defendant BBC and against Plaintiff TYC.

|  |  |
|---|---|
| April 27, 2010<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |